# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

ASCENTE BUSINESS CONSULTING, LLC
d/b/a LIBERTYID,

   Plaintiff,

v.

Case No. 18-cv-138 (JNE/KMM)
ORDER

DR MYCOMMERCE d/b/a ESELLERATE;
DIGITAL RIVER, INC.

   Defendants.

---

John Bisanz, Jr., Henson & Efron, P.A., and James G. Sawtelle, Sherman & Howard, LLC, appeared for Plaintiff.

Gregory J. Stenmoe and Kristin M. Emmons, Briggs & Morgan, P.A., appeared for Defendants.

---

  This matter involves a dispute between Plaintiff Ascente Business Consulting ("Ascente") and Defendants DR myCommerce ("DRM") and Digital River, Inc., DRM's parent company. Ascente paid DRM and Digital River nearly $250,000 to design and build a web portal for its identity theft business. The portal failed to work properly and Ascente brought suit, alleging breach of contract, breach of good faith, unjust enrichment, fraud, negligent misrepresentation, gross negligence, and tortious interference with contract. Defendants moved to dismiss all seven counts. For the reasons set forth below, that motion is granted in part and denied in part.

## BACKGROUND

Ascente is a Colorado-based limited liability company that provides identity theft protection products to consumers. DRM is a Minnesota-based software development company. Digital River is its parent company.

In 2014, Ascente and DRM negotiated for DRM to develop a consumer-facing web portal that would allow Ascente's customers to purchase an identity-monitoring subscription service online. Ascente and DRM entered into two agreements in May of that year: the Statement of Work and the Publisher Agreement. The Statement of Work set forth the project specifications and provided that Ascente would pay $44,822 to DRM for its web portal services. Under the Publisher Agreement, DRM would share in ten percent of the revenue generated by the web portal.

The portal was to be completed by October 2014. That month, DRM informed Ascente that DRM had exceeded its projected costs in developing and building the web portal. On October 29, 2014, the web portal went live. It did not work as anticipated, and over the next two months, Ascente relayed a series of concerns about the web portal to DRM. The parties met in January 2015 to discuss these issues. At the meeting, DRM allegedly informed Ascente that it would need an additional $187,336 to correct the web portal problems. Ascente agreed to pay this amount, apparently based on assurances from DRM that the completed portal would meet the specifications originally set forth in the Statement of Work. DRM continued to work on the portal. In May 2015, DRM notified Ascente that it needed an additional $6,700 to complete the project. Ascente agreed to pay this amount – once again based on DRM's alleged assurances that the portal would meet all of the specifications. In June 2015, Ascente was forced to push back the planned launch of its business-to-customer ("B to C") marketing campaign because of continued defects with the portal.

In July 2015, the parties executed a third agreement: the Software Development Agreement. Under the terms of this contract, Ascente formally agreed to pay $187,336 – the additional amount the parties had agreed to in January – in exchange for a web portal that met the specifications set forth in an appendix to the Software Development Agreement. By December 2015, Ascente had paid $243,258 to DRM and Digital River – the full amounts due under the Statement of Work and the Software Development Agreement.

On February 1, 2016, DRM allegedly sent Ascente a communication that stated: "We've had some staffing changes in our business, and the team that created the portal is no longer with our company. Unfortunately we do not have any resources that would be able to take this one, even if it were a small simple change." Compl. ¶ 45. Ascente alleges that DRM then "washed its hands of the project," that they "refuse[d] to do any additional work" on it, and that none of Ascente's money has been refunded despite the fact that the portal does not work according to specifications. Compl. ¶¶ 46-47. Ascente also claims that DRM's failure to deliver a portal that met specifications "hamstrung Ascente's efforts to grow its business." Compl. ¶ 48.

Ascente filed this complaint in January 2018, alleging breach of contract (against DRM only), breach of the covenant of good faith and fair dealing (DRM only), unjust enrichment (DRM and Digital River), fraud and fraudulent inducement (DRM and Digital River), negligent misrepresentation (DRM and Digital River), gross negligence (DRM and Digital River), and tortious interference with contractual relationships (Digital River only). Defendants moved to dismiss all seven counts.

**LEGAL STANDARD**

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555 (1955)). Plausibility is assessed by "draw[ing] on . . . judicial experience and common sense." *Id*. at 679. Moreover, courts must "review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." *Zoltek Corp. v. Structural Polymer Grp*., 592 F.3d 893, 896 n.4 (8th Cir. 2010).

## DISCUSSION

As noted above, Ascente's complaint sets forth seven claims against the Defendants. Two of those claims – breach of contract and unjust enrichment – survive the motion to dismiss. The other five do not.

### (1) Breach of Contract

Ascente alleges that DRM breached all three of the agreements between the parties when it failed to deliver a web portal that met the required specifications. DRM counters that the breach claims under the first two agreements are time barred, and that the breach claim under the third agreement should be dismissed because Ascente failed to fulfill a condition precedent.

*Two-Year Limitation Period*

DRM contends that Ascente's breach claims as to the two original agreements – the Statement of Work and the Publisher Agreement – are time barred by Section 11.8 of the Publisher Agreement, which states: "[A]ny claims for breach of this Agreement shall be brought within two (2) years of the date that Party first learns of such breach." ECF No. 22 at 14. DRM argues that Ascente first learned it had a claim for breach on October 29, 2014, when DRM did not meet its

original deadline. DRM further argues that even if Ascente did not know of the breach as of October 2014, it did know by June 2015. By that point in time, DRM contends, Ascente had discussed the problems with the portal with DRM (in January 2015), learned from DRM that an additional sum of money would be needed to complete the project (in May 2015), and pushed back its B-to-C launch because of the delays flowing from the defective web portal (in June 2015). DRM argues that, taken together, these alleged events were enough to provide Ascente with sufficient knowledge that it had a claim for breach more than two years before it brought suit.

DRM's time-bar argument is unsuccessful. As an initial matter, DRM's focus on the two-year limitation provision in the Publisher Agreement is misplaced, because both that agreement and the Statement of Work were superseded by the Software Development Agreement (the third agreement). Section 10.g. of the third agreement makes clear that it represents "the entire understanding between the Parties with respect to the subject matter thereof, and supersedes any and all prior or contemporaneous proposals, communications, agreements, negotiations, and representations, whether written or oral, related thereto." ECF No. 24 at 7.[1] Because of this clause, the third agreement is the only contract under which Ascente can claim a breach. S*ee Qwinstar Corp. v. Anthony*, 882 F.3d 748, 754 (8th Cir. 2018). And, therefore, it is also the only contract under which DRM could advance a time-bar defense.

---

[1] Ascente's arguments against the merger of the first two agreements into the third are unsuccessful. *See* Pl's. Mem. at 14-16. All three agreements plainly involve the same subject matter (the web portal), and therefore they are all squarely within the scope of the integration clause. *See Redman v. Sinex*, 675 F. Supp. 2d 961, 966 (D. Minn. 2009). Moreover, while Sections 5.b. and 5.c. of the Software Development Agreement make reference to the Publisher Agreement, these provisions are not inconsistent with the parties' intent to integrate the prior agreements. Likewise, the references to the statement of work in Sections 2.c. and 3 of the third agreement are to the statement of work in the third agreement, not the Statement of Work (the second agreement).

DRM does not make a limitation period argument as to the third agreement – but, even if it had, it would not have succeeded. Like the first two agreements, the third agreement contains a two-year limitation period on breach claims, starting from the point in time when Ascente first learned there had been a breach. ECF No. 24 at 8. Under Eighth Circuit law, the key question in assessing a Rule 12 challenge based on a limitation period such as this one is whether "it appears from the face of the complaint itself that the limitation period has run." *Guy v. Swift & Co.*, 612 F.2d 383, 385 (8th Cir. 1980). Here, the complaint establishes that although Ascente knew something was wrong with the web portal as early as October 2014, it did not necessarily know why. The parties' various agreements spelled out a series of complicated and specialized tasks that DRM was to perform, which made it difficult for Ascente to ascertain whether the portal failures were on DRM's end or caused by some other factor. *See* Pl.'s Mem. at 9. The Court therefore finds that it was not until February 2016, when Defendants apparently walked away from the project, that Ascente learned there had been a breach. This places the January 2018 complaint within the two-year limitation period. Accordingly, Ascente's breach claim under the third agreement is not time barred.

*Condition Precedent*

Having established that Ascente's breach claim under the third agreement is not time barred, the Court turns next to DRM's argument that Ascente did not fulfill a condition precedent to recovery as set forth in that agreement. Specifically, DRM points to Ascente's allegation in its complaint that DRM did not perform its services "in a professional and workmanlike manner," Compl. ¶ 51, as required by a warranty clause in Section 8 of the Software Development

Agreement. DRM argues that Ascente was obligated to provide DRM with 30 days' notice as to any breach of this warranty.

DRM's argument fails for two reasons. First, Ascente's complaint alleges that it "immediately reported" the web portal failures to DRM as they arose. Compl. ¶ 28-29. This is a sufficiently plausible claim to counter DRM's argument as to the 30-day requirement. Second, DRM appears to conflate Ascente's breach of contract claim with its allegation that DRM also breached the warranty clause in Section 8 of the third agreement. Ascente clearly alleges that DRM breached the Software Development Agreement when it failed to deliver the software as agreed upon in Section 2 of that contract. Compl. ¶ 51. Ascente *also* alleges that DRM promised to perform those services in a professional and workmanlike manner. *Id.* But the breach of contract claim does not depend on the breach of warranty allegation. Therefore, even if Ascente had failed to meet the conditions for the breach of warranty allegation – which, as explained above, it did not – this would not provide a basis for dismissing its breach of contract claim.

In sum, Ascente has set forth sufficiently plausible allegations that DRM breached the Software Development Agreement (the parties' third agreement). DRM's motion to dismiss Ascente's claim for breach under that agreement is therefore denied.

### (2) Breach of Good Faith and Fair Dealing

Under Minnesota law, a party establishes bad faith "by demonstrating that the adverse party has an ulterior motive for its refusal to perform a contractual duty." *OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Research*, 132 F. Supp. 3d 1119, 1127 (D. Minn. 2015). Bad faith is "not

an honest mistake regarding one's rights or duties." *Sterling Capital Advisors, Inc. v. Herzog*, 575 N.W.2d 121, 125 (Minn. Ct. App. 1998).

Ascente alleges that DRM's failure to fulfill its obligations was in bad faith because DRM entered the contracts knowing that it could not perform. *See* Pl.'s Mem. at 18. Moreover, Ascente contends that DRM not only entered the contracts initially with this knowledge, but demanded significantly more money to complete the project once work was already underway. *Id.* Ascente also argues that DRM acted in bad faith when it walked away from the project and refused to do any more work or refund any of the money that Ascente had paid. Ascente alleges that these were not "honest mistakes," but rather calculated and "crass" choices driven by DRM's desire to take as much money from Ascente as possible. *Id*.

Although ulterior motive is not a "magic word" under Minnesota law, Ascente does need to set forth plausible allegations that DRM's failures to fulfill its obligations were not honest mistakes. Ascente does not do this. It merely asserts, without providing sufficient factual support or evidence, that Defendants knew the web portal would fail from the start, and that they were just fleecing Ascente for more than a year until the company paid nearly $250,000. DRM's closing up shop in February 2016, apparently without having delivered a working web portal to Ascente, may be circumstantially suspicious. But nothing in Ascente's complaint or its response brief plausibly alleges that this was a bad faith move by DRM, or that the failure to deliver was driven by dishonesty rather than some other factor. Accordingly, the motion to dismiss Ascente's bad faith claim is granted.

### (3) Unjust Enrichment

To prevail on a claim of unjust enrichment under Minnesota law, "a claimant must establish an implied-in-law or quasi-contract in which the defendant received a benefit of value that unjustly

enriched the defendant in a manner that is illegal or unlawful." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012). Ascente alleges that Defendants were unjustly enriched when they accepted $243,258 from Ascente without delivering a working web portal. Compl. ¶¶ 62-65.

Defendants argue that the unjust enrichment claim should be dismissed because a party cannot seek equitable remedies when adequate legal remedies are available. *See, e.g., ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 305 (Minn. 1996); *Southtown Plumbing, Inc. v. Har–Ned Lumber Co.*, 493 N.W.2d 137, 140 (Minn. Ct. App. 1992) ("Relief under the theory of unjust enrichment is not available where there is an adequate legal remedy or where statutory standards for recovery are set by the legislature."). However, Plaintiffs are permitted to plead in the alternative, *see* Fed. R. Civ. P. 8(d)(2)-(3), and courts in this district have allowed plaintiffs to plead unjust enrichment in the alternative when an adequate legal remedy may be available. *See United States v. R.J. Zavoral & Sons Inc.,* 894 F. Supp. 2d 1118, 1127 (D. Minn. 2012); *Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822, 828 (D. Minn. 2010). Plaintiffs have set forth sufficiently plausible allegations of unjust enrichment to withstand a Rule 12 challenge. Therefore, the Court declines to dismiss Ascente's unjust enrichment claim at this time.[2]

### (4) Fraud

Under Minnesota law, a plaintiff claiming fraud must establish: "(1) a false representation of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce action in reliance thereon; (4) that the representation caused action in reliance thereon;

---

[2] The Court notes that the breach of contract claim was brought against DRM only, not against Digital River. Therefore, the unjust enrichment claim against Digital River does not require pleading in the alternative to proceed.

9

and (5) pecuniary damages as a result of the reliance." *U.S. Bank N.A. v. Cold Spring Granite Co.*, 802 N.W.2d 363, 373 (Minn. 2011). Ascente alleges that Defendants made a series of fraudulent misrepresentations during the contract negotiation process and after the agreements were executed. Specifically, the complaint points to claims by at least seven named DRM representatives as to the company's capability and expertise, the likelihood that the product would be ready on time, the extent to which the portal met specifications, and DRM's ability to fix problems that arose. Compl. ¶ 67.

Defendants argue that Ascente failed to plead fraud with sufficient particularity. To adequately plead a claim for fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This requires plaintiffs to plead the "time, place, and content" of the fraud and "the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1070 (8th Cir. 2016) (internal quotations omitted). Defendants here point to the lack of a specific date on which the contested statements were made, the absence of a location, and the failure to cite specific words used by the named individuals. Def.'s Mem. at 16.

While it is true that a plaintiff need not "plead every detail of the alleged fraud," *Ransom v. VFS, Inc.*, 918 F.Supp.2d 888, 900 (D. Minn. 2013), the Court finds that Ascente has not done enough here to clear the Rule 9 bar. Moreover, under Minnesota law, for a misrepresentation of a present intention to amount to fraud, "it must be made affirmatively to appear that the promisor had no intention to perform at the time the promise was made." *Vandeputte v. Soderholm*, 216 N.W.2d 144, 147 (Minn. 1974)*; see also Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359 (Minn. 2009). Ascente alleges that DRM never intended to complete the work. *See* Compl. ¶¶

23, 33, 27, 41; Pl.'s Mem. at 27. But it provides no plausible factual allegations to support this claim. For these reasons, the fraud claim is dismissed.

**(5) Negligent Misrepresentation**

To establish negligent misrepresentation, a plaintiff must show that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant supplied false information to the plaintiff, (3) the plaintiff justifiably relied on that information, and (4) the defendant failed to exercise reasonable care in communicating the information. *See Aulick v. Skybride Ams., Inc.*, 860 F.3d 613, 623 (8th Cir. 2017). However, the Minnesota Supreme Court has "carefully limited recognition of the tort of negligent misrepresentation," *Williams v. Smith*, 820 N.W.2d 807, 821 (Minn. 2012). Of particular relevance here, Minnesota courts have not recognized a duty of care in an arm's length commercial transaction. *See Smith v. Woodwind Homes, Inc.*, 605 N.W.2d 418, 424 (Minn. Ct. App. 2000) ("[W]here adversarial parties negotiate at arm's length, there is no duty imposed such that a party could be liable for negligent misrepresentations."); c*f. Valspar*, 764 N.W.2d at 370 n. 7 (Minn. 2009) (declining to decide whether negligent misrepresentation can arise from an arm's-length commercial transaction). Therefore, to the extent that Ascente and the two defendants were engaged in an arm's length commercial transaction, the duty of care element may be missing.

Ascente first looks to overcome this apparent roadblock by arguing that the Ascente-DRM relationship was not an arm's length transaction. Specifically, Ascente contends that Defendants had "superior knowledge or expertise," and that the parties were not sophisticated equals. Pl.'s Mem. at 31. But the facts alleged belie this argument. The complaint contains no specific allegations that point toward an asymmetry in bargaining power or expertise. Indeed, to the contrary, Ascente describes itself as a "leading provider" of identity theft solutions, not an unsophisticated newcomer. Compl. ¶ 6.

Ascente also argues that Defendants owed Ascente a duty because the relationship between the parties was "a close, continuous association," not an adversarial one. Pl.'s Mem. at 31; *see Safeco Ins. Co. of Am. v. Dain Bosworth Inc.*, 531 N.W.2d 867, 871 (Minn. Ct. App. 1995) ("[W]here a special relationship exists . . . there is a duty to avoid negligently giving false information."). In support of this argument, Ascente points to the Publisher Agreement, under which Ascente would share with Defendants profits from products purchased via the web portal. But this argument fails for several reasons. First, Ascente does not provide any Minnesota case law – nor, it appears, could they – embracing its theory that a profit-sharing arrangement constitutes the kind of "special relationship" that carries with it a duty of care. Second, even if such an arrangement had been designated as a special relationship by Minnesota courts, the Publisher Agreement was superseded by the Software Developer Agreement (as discussed above). And third, the Software Development Agreement expressly states in Section 10.g. that nothing in the contract should be construed as creating a "partnership, joint venture, or other business combination" between Ascente and DRM. *See Signature Bank v. Marshall Bank,* 2006 WL 2865325, at *5 (Minn. Ct. App. Oct. 10, 2006) (holding that there was no duty of care in a commercial transaction where the contract expressly stated that there was no partnership or joint venture).

In sum, because the parties were engaged in an arm's length transaction, and because Minnesota law does not recognize a duty of care in such situations, Ascente's claim under a theory of negligent misrepresentation cannot succeed. The motion to dismiss that claim is therefore granted.

### (6) Gross Negligence

Ascente's claim for gross negligence fails for the same reason as its claim for negligent misrepresentation: Defendants did not owe Ascente a duty outside of their contract together. To bring a claim of negligence under Minnesota law, a plaintiff must show that the defendant owed him a duty that the defendant then breached. *Johnson v. State*, 553 N.W.2d 40, 48 (Minn. 1996). But because Minnesota does not recognize negligent breach of contract as a cause of action, that duty must arise from an obligation outside a contract between the parties. *See Constr. Sys., Inc. v. Gen. Cas. Co. of Wis.,* 2011 WL 3625066, at *9 (D. Minn. Aug. 17, 2011); *Lesmeister v. Dilly*, 330 N.W.2d 95, 102 (Minn. 1983).

Here, Ascente argues – as it did with regard to its negligent misrepresentation claim – that the profit-sharing arrangement between the parties created such a duty. But as discussed above, that argument is unpersuasive because (a) Minnesota courts do not appear to recognize a duty of care originating from this kind of arrangement, (b) the profit-sharing arrangement was superseded by the parties' third agreement, and (c) the third agreement expressly stated that the parties were not in a joint venture or other similar business association. Therefore, the motion to dismiss the gross negligence claim is granted.

### (7) Tortious Interference with Contract

To prevail on a claim of tortious interference with contract, a plaintiff needs to establish the following elements: "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages." *E–Shops Corp. v. U.S. Bank Ass'n*, 678 F.3d 659, 664 (8th Cir. 2012). Ascente alleges that Digital River intentionally procured DRM's breach of all three agreements.

Digital River argues that, as DRM's parent company, it is justified in interfering with DRM's contracts, provided it does not use wrongful means. Def.'s Mem. at 25; *see Phil Crowley*

*Steel Corp. v. Sharon Steel Corp.*, 702 F.2d 719, 722 (8th Cir. 1983) ("A corporation with a financial interest in another corporation is deemed to be justified unless it is shown that the parent employed wrongful means or acted with an improper purpose."); *James M. King & Assocs., Inc. v. G.D. Van Wagenen Co.*, 717 F. Supp. 667, 681 (D. Minn. 1989) ("[A] parent is privileged to, or justified in, interfering with the contracts of its wholly-owned subsidiary provided it does not use wrongful means and acts to protect its economic interests."); *but see Scoular Co. v. Ceres Glob. Ag Corp.,* 2017 WL 3535210, at *9 (D. Minn. Aug. 16, 2017) (raising doubts about whether the privilege applies for a subsidiary interfering with the contracts of its parent). Generally, the burden of proving a justification for any alleged contract interference falls on the defendant. *Prudential Ins. Co. of Am. v. Metrowide Grp.*, 2009 WL 9110461, at *7 (D. Minn. July 16, 2009), *report and recommendation adopted*, 2009 WL 9110462 (D. Minn. Aug. 10, 2009); *Kjesbo v. Ricks*, 517 N.W.2d 585, 588 (Minn. 1984). But the Eighth Circuit has held that dismissal is appropriate if it appears from the pleadings that the defendant's alleged interference was permissible. *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982–83 (8th Cir. 2008) ("If an affirmative defense such as a privilege is apparent on the face of the complaint, however, that privilege can provide the basis for dismissal under Rule 12(b)(6)."). Here, the complaint indicates that Digital River informed Ascente in February 2016 that DRM could not continue to work on the project in 2016 because it lacked the resources to do so. Compl. ¶ 88. This points toward a legitimate justification for the alleged interference. *Id.* ("Generally, a defendant's actions are justified if it pursues its legal rights via legal means."). Accordingly, the tortious interference claim cannot survive Defendants' Rule 12 challenge.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' Motion to Dismiss [ECF No. 18] is GRANTED IN PART and DENIED IN PART.

2. The Motion is GRANTED as to Plaintiff's second, fourth, fifth, sixth, and seventh claims. Those claims are DISMISSED.

3. The Motion is DENIED as to Plaintiff's first and third claims, as set forth in this Order.

Dated: July 26, 2018　　　　　　　　　　　　　　　**s/ Joan N. Ericksen**
　　　　　　　　　　　　　　　　　　　　　　　　JOAN N. ERICKSEN
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge