UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ASCENTE BUSINESS CONSULTING, LLC d/b/a LIBERTYID, | Case No. 0:18-cv-00138-JNE-KMM |
| Plaintiff, | |
| v. | **ORDER** |
| DR MYCOMMERCE d/b/a ESELLERATE; and DIGITAL RIVER, INC.; | |
| Defendants. | |

This matter is before the Court on Ascente Business Consulting LLC's ("Ascente") motion for leave to amend the complaint. (ECF No. 54.) Ascente seeks permission to add claims for fraud, fraudulent inducement, and reckless misrepresentation against the defendants, DR MyCommerce ("DRM") and Digital River, Inc. ("Digital River"), which is DRM's parent company. In an Order dated July 26, 2018, the District Court granted the defendants' motion to dismiss a fraud claim that Ascente included in its original Complaint. (7/26/2018 Order, ECF No. 36.) Now that the parties have engaged in discovery, Ascente argues that it can adequately plead fraud and fraudulent-inducement claims as well as a reckless-misrepresentation claim. DRM and Digital River argue that Ascente's motion to amend should be denied because the proposed claims are futile—*i.e.*, they would not survive a motion to dismiss for failure to state a claim. For the reasons that follow, the motion to amend is granted in part and denied in part.

I.  Background[1]

Ascente provides identity-theft protection products to consumers. DRM is a software development company and a wholly owned subsidiary of Digital River. Ascente approached DRM in January 2014 to develop a web portal so that individual consumers

---

[1] This recitation of the facts is drawn from Ascente's Proposed Amended Complaint. (*See* ECF No. 57-2; *see also* ECF No. 60-2 (Defs.' Redline).)

could go online and purchase an identity-monitoring subscription service from Ascente. The parties negotiated and, in May 2014, agreed to a "Statement of Work," by which Ascente would pay DRM $44,822 to develop the web portal. The parties also entered a "Publisher Agreement," which provided that DRM would receive 10 percent of the revenue that was generated by the web portal. The development of the web portal was to be completed in approximately five months, by October 2014.

In October, DRM told Ascente that it exceeded projected costs in developing and building the portal. On October 28, 2014, Jennifer Manwarren and Thomas Peterson, both of DRM, exchanged an email indicating that the web portal was "on schedule" to be launched before the end of the month. (Proposed Am. Compl. ¶ 27.) On October 28th and 29th, Chad Johnson and Cory Husfeldt of DRM told Ascente employee Bret Busse that the portal was ready for launch and "ready for commerce" as required by the parties' agreement. (*Id.* ¶ 28.)

Around the same time, DRM delivered the web portal to Ascente. Unfortunately, when it went live on October 29, 2014, the web portal did not function as intended. (Proposed Am. Compl. ¶ 34.) Several months later, on January 20, 2015, DRM employee Christine Roe emailed her coworker, Jim Swenson, and stated that certain work on the portal had not been completed. (*Id.* ¶¶ 29–31.) Ms. Roe also stated that the software that was delivered was not the end product, and she believed that Ascente was "getting a little screwed." (*Id.*)

Ascente informed DRM of the problems it was having with the web portal and representatives of both sides met in Denver on January 28, 2015 to negotiate a new agreement. (Proposed Am. Compl. ¶¶ 35, 38.) According to Ascente, prior to the meeting in Denver, DRM employees Matthew Kleinsasser and Stefan Weber exchanged internal messages regarding the need to bring the web portal software up to compliance with security standards to protect credit card information. Recognizing that this would take a considerable amount of work, Mr. Weber stated: "I wish we could get rid of Ascente[.]" (*Id.* ¶ 65.) Ascente claims that the Defendants then "hatched a plan to dump the web portal," claiming that they would complete the web portal if they received additional money from Ascente, but really "had no intention to do so." (*Id.* ¶ 66.) On January 28, 2015, Mr. Weber emailed Swenson, Kleinsasser, and other DRM personnel

indicating that DRM employee Rodney Salazar would "try to get out of the contract with Ascente today." (*Id.* ¶ 67.)

However, at the January 28, 2015 Denver meeting, Ascente and DRM did not break off their business relationship. Chad Johnson (DRM) told Ascente representatives that DRM had outstanding development costs of $187,336.25, which they had incurred in working on the project. (Proposed Am. Compl. ¶¶ 39–40.) Mr. Johnson offered that the defendants would complete the work necessary to get the web portal up and running in exchange for Ascente's agreement to pay the outstanding development costs. (*Id.* ¶ 40.) Based on the internal DRM communications before the Denver meeting and several others that occurred afterward, Ascente asserts that DRM never intended to do any additional work on the portal. (*Id.* ¶¶ 68–71, 74–85.) For example, in early February 2015, several DRM employees internally discussed getting rid of or "divesting" from Ascente as well as placing a hold on development work. (*Id.* ¶¶ 68–71.)

Moreover, Ascente alleges that the $187,336[2] the Defendants said they incurred as DRM's outstanding development costs was not the actual amount. Ascente alleges:

> On February 17, 2015, [Chad] Johnson [of DRM] reviewed a draft [bill] and pointed out that Ascente's "most recent contract/SOW call[s] for $73 hour versus the $75 that's called out in the invoice." [Jennifer] Manwarren [of DRM] responded, "Are you serious?" Johnson wrote "Yep. We can try to submit to them as is but they will likely question it." Manwarren: "No. They agreed to a dollar amount–, so you saw the wild math I had to do to get there." ... Instead, Johnson suggested, "What if I deleted the rate and just left the total?"

(Proposed Am. Compl. ¶ 72.) The defendants did not tell Ascente that the $187,336 "was not an accurate figure, nor did they ever tell Ascente the true amount of their alleged cost overruns." (*Id.* ¶ 73.) Ascente eventually paid $187,336 to DRM, with the last installment payment occurring on May 4, 2016. (*Id.* ¶¶ 41, 44.)

Out of the agreement reached at the Denver meeting, the parties reached a new contractual arrangement. In July 2015, the parties executed a Software Development

---

[2] At times in the record, the alleged cost overruns are identified as $187,336 or $187,335. This $1 difference appears to be immaterial. The court will use the $187,336 figure in this Order.

Agreement ("SDA"), which formalized Ascente's agreement to pay an additional $187,336 in exchange for the defendants delivering a web portal that met certain specifications laid out in an Appendix A that was attached to the agreement. (Proposed Am. Compl. ¶ 52.) According to Ascente, it never received a web portal that worked as intended, and the defendants' communications that followed the SDA's execution allegedly show that the defendants did not intend to provide a functioning portal after DRM was paid the $187,336. (*Id.* ¶¶ 80–87.) For example, in an August 27, 2015 email, Christine Roe suggested to a colleague that "Ascente access can probably be dropped.... We're not planning any additional coding changes...." (*Id.* ¶ 80.) Other internal messages among the defendants' personnel from April, June, and October of 2016 allegedly confirm that DRM never intended to do additional work on the project, but instead falsely claimed to have delivered a working portal. (*Id.* ¶¶ 81–82, 84–85.) Ascente claims it has not been able to launch its business-to-consumer marketing campaign as a result of the defendants' failure to provide a functioning web portal, costing it millions of dollars in revenue. (*Id.* ¶ 88.)

## II. Futility Standard

Federal courts should freely give leave to a party moving to amend its pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, there are several reasons a court may deny leave to amend. *See, e.g., Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001) ("[D]enial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated."). Here, the defendants rely solely on their argument that the proposed amendment would be futile to support their opposition to amendment. A futility challenge will defeat a motion to amend when "the proposed amended complaint cannot survive a motion to dismiss for failure to state a claim." *Lunsford v. RBC Dain Rauscher, Inc.*, 590 F. Supp. 2d 1153, 1158 (D. Minn. 2008).

A complaint survives a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) when, accepting the factual allegations as true, it states a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court determining whether the claim has facial plausibility draws reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010).

4

However, a court may disregard legal conclusions in a complaint that are couched as factual allegations. *See Iqbal*, 556 U.S. at 678–79.

Generally, courts ignore matters outside the pleadings when considering the sufficiency of a complaint under Fed. R. Civ. P. 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). However, courts may "consider some material that are part of the public record or do not contradict the complaint as well as materials that are necessarily embraced by the pleadings." *Id.* (quotations and citation omitted); *see also Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) ("[D]ocuments 'necessarily embraced by the complaint' are not matters outside the pleading."). Consideration of such materials is discretionary. *Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 701 (8th Cir. 2003).

### III. Analysis

Ascente seeks leave to amend its complaint to add claims for fraud, fraudulent inducement, and reckless misrepresentation. The defendants argue that Ascente's proposed amendments should not be permitted because they cannot survive a motion to dismiss for failure to state a claim. As discussed below, with one narrow exception, the Court concludes that Ascente's proposed amended complaint fails to state a claim for fraud, fraudulent inducement, or reckless misrepresentation.

#### A. Applicable Law

The defendants' futility challenge requires the Court to consider Minnesota's substantive law regarding fraud, fraudulent inducement, and reckless misrepresentation. All of these claims must be pled with the particularity required by Rule 9(b). Fed. R. Civ. P. 9(b); *Lyon Fin. Servs., Inc. v. MBS Mgmt. Servs., Inc.*, No. 06-cv-4562 (PJS/JJG), 2007 WL 2893612, at *3, *8 (D. Minn. Sept. 27, 2007) (providing that not only fraud claims, but also claims for reckless misrepresentation must comply with the particularized pleading requirements of Rule 9(b)). With respect to Ascente's fraud claim, the allegations in the complaint must show:

> (1) a false representation of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce action in reliance thereon; (4) that the representation

5

caused action in reliance thereon; and (5) pecuniary damages as a result of the reliance.

*U.S. Bank N.A. v. Cold Spring Granite Co.*, 802 N.W.2d 363, 373 (Minn. 2011)) (internal quotation marks omitted).

Similar to the fraud claim, Ascente's claim for fraudulent inducement under Minnesota law requires it to plead with specificity that (1) defendants made a misrepresentation of material fact; (2) defendants knew their representations were false at the time or made the representations without regard to their truth or falsity; (3) defendants intended to induce Ascente to enter into the agreement; (4) Ascente entered the agreement in reasonable reliance on the statements; (5) Ascente suffered damages; and (6) the misrepresentations proximately caused the damages. *See Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn. 2000); *see also Triple Five of Minn., Inc. v. Simon*, 213 F.R.D. 324, 328 (D. Minn. 2002) (listing elements of fraudulent inducement and citing *Cohen v. Appert*, 463 N.W.2d 787, 789 (Minn. Ct. App. 1990)).

"Reckless misrepresentation occurs when a misrepresenter speaks positively and without qualification, but either is conscious of ignorance of the truth, or realizes that the information on which he or she relies is not adequate or dependable enough to support such a positive, unqualified assertion." *Christensen v. Metropolitan Life Ins. Co.*, 542 F. Supp. 2d 935, 944 (D. Minn. 2008) (quoting *Florenzano v. Olson*, 387 N.W.2d 168, 174 (Minn. 1986)) (internal quotation marks omitted).

### B. Alleged Misrepresentations

It is, in plaintiff's counsel's own words, "difficult to pinpoint" the specific misrepresentations on which Ascente bases its proposed additional claims. (Audio of 2/7/2019 Hr'g ("Hr'g Audio") at 11:27:35 (on file with the Court).) However, the Proposed Amended Complaint outlines the alleged misrepresentations forming the fraud, fraudulent-inducement, and reckless-misrepresentation claims in paragraph 102, which are summarized on page 16 of the plaintiff's supporting memorandum. (Proposed Am. Compl. ¶¶ 102, 111.) The Court analyzes whether it would be futile to allow Ascente to add claims based on these alleged misrepresentations by determining whether they fail to state a claim upon which relief can be granted. And in several respects, the allegations in Ascente's Proposed Amended Complaint are simply insufficient.

### 1. "Ready for Commerce"

The first misrepresentations Ascente points to are statements made by DRM employees Chad Johnson and Cory Husfeldt to Brett Busse (Ascente) on October 28 and 29, 2014 that the web portal delivered was "ready for launch and 'ready for commerce' as required by the parties Statement of Work." (Proposed Am. Compl. ¶¶ 28, 102(c); *see also* Pl.'s Mem. at 16.) Ascente appears to suggest that it relied on these representations "launching the product in October 2014...." (Pl.'s Mem. at 16; Proposed Am. Compl. ¶ 33.) And Ascente alleges that as a result of the problems that accompanied the launch of the web portal its "very first customers were unable to register for Ascente's identity-theft services" and it had to delay launching a large-scale business-to-consumer campaign. (Proposed Am. Compl. ¶¶ 35–37.)

Based on the facts alleged, the Court finds that this statement cannot form the basis of a fraud, fraudulent-inducement, or reckless misrepresentation claim. The problem for Ascente is that the Proposed Amended Complaint contains no factual allegations indicating that the DRM employees responsible for telling Mr. Busse that the web portal was ready for launch, ready for commerce, and met all the requisite specifications knew that their statements were false at the time they made them or made any statements without regard for their truth or falsity. Ascente argues otherwise, pointing to internal DRM emails from Christine Roe to Jim Swenson and Joe Ruterbories, which allegedly show that DRM had not completed the work on the web portal. (Proposed Am. Compl. ¶¶ 29–30.) But these messages were sent in January of 2015, several months *after* the representations were allegedly made to Mr. Busse about the product's readiness. There are no facts suggesting that Chad Johnson and Corey Husfeldt were or should have been aware of the alleged problems at the time they told Mr. Busse the web portal was ready to go live.

### 2. Cost Overruns and "Wild Math"

Next, Ascente claims that the defendants "falsely claimed on at least January 28 and 29, 2015 that they had incurred $187,336.25 in cost overruns, despite admitting internally that they did some 'wild math' after the fact to come up with that figure." (Pl.'s Mem. at 16; *see also* Proposed Am. Compl. ¶¶ 40, 72.) Ascente asserts that the defendants represented a present material fact when stating that they incurred over

7

$187,000 in cost overruns while developing the web portal. According to the Proposed Amended Complaint, after making that representation during the January 28, 2015 meeting in Denver, the defendants realized that the internal calculation of that number was based on a $75/hour rate. However, by February 17, 2015, the defendants' personnel realized that the cost-overruns number should have been calculated using a $73/hour rate instead. (*See* Proposed Am. Compl. ¶ 72; Emmons Decl., ECF No. 60, Ex. 16 (internal DRM email chain).) Internal communications indicate that DRM engaged in "wild math" to arrive at the same $187,336 figure using the $73/hour rate. (Emmons Decl., Ex. 16.) The defendants did not inform Ascente of this discrepancy and instead allegedly provided an invoice to Ascente that simply omitted any reference to the hourly rate or number of hours worked. (*See* Letter from James Sawtelle to Menendez, M.J. (Feb. 22, 2019), ECF No. 63.) Ascente asserts that it relied on DRM's representation of the amount of its cost overruns in negotiating and signing the SDA and in making the additional payments to the defendants contemplated by the agreement. (Pl.'s Mem. at 16; *see* Proposed Am. Compl. ¶ 44.)

These allegations essentially lay out a fraudulent-inducement claim. The Court finds that the facts set forth in the Proposed Amended Complaint adequately state a claim that the defendants' alleged misrepresentation regarding the amount of their cost overruns induced Ascente to enter the SDA. More specifically, Ascente articulates a sufficient claim that the allegedly inflated value of the cost overruns led it to enter an SDA with a higher payment due than it would have absent the falsity.

The defendants raise three challenges to this aspect of Ascente's attempt to amend the complaint. The defendants argue that the statement that they incurred costs totaling $187,336.25 is "not a false representation." (Defs.' Resp. at 16, ECF No. 59.) This argument raises a fact question that cannot be resolved when applying the standard for a motion to dismiss for failure to state a claim. It may ultimately be correct, as the defendants contend, that the dollar figure is merely a flat fee that was agreed upon for development services. But it may also be that the dollar figure represents a false statement of historical fact by the defendants that was intended to induce Ascente to enter the SDA on terms more favorable to DRM than if the cost overruns had been accurately represented. Taking the facts alleged in the Proposed Amended Complaint as true and accepting the reasonable inferences from them in the light most favorable to

8

Ascente, the Court concludes, at this stage, that Ascente has adequately pled that the defendants made a false representation regarding the amount of the cost overruns.

Second, the defendants argue that the fraudulent-inducement claim is futile because the SDA, which includes the $187,336 fee contains a complete integration or merger clause. (Defs.' Mem. at 17.) That clause states:

> [The SDA is] the entire understanding between the Parties with respect to the subject matter thereof, and supersedes any and all prior or contemporaneous proposals, communications, agreements, negotiations, whether written or oral, related thereto.

(*See* 7/26/2018 Order at 5 (quoting section 10.g. of the SDA).) During oral argument, defense counsel referenced *Crowell v. Campbell's Soup Co.*, 264 F.3d 756 (8th Cir. 2001), and argued that where parties have entered an agreement containing a complete integration clause, then it is not reasonable for one party to rely on any assertion outside that agreement. (Hr'g Audio 11:53:00–11:54:00, 11:58:50–11:59:10.) Therefore, they argue, that any dispute about the calculus that led to the dollar value in the SDA is vitiated by the integration clause.

In *Crowell*, several chicken growers brought suit against a processor for breach of contract, fraudulent inducement, and misrepresentation. 264 F.3d at 759–60. The growers alleged that the processor terminated their agreements without cause despite having made an oral promise, prior to entering the agreements, to only terminate the contracts "for cause."[3] *Id.* at 760. They claimed to have relied on the processor's promise to only terminate "for cause" in entering the agreements. *Id.* The written agreements did not contain a "for cause" provision, gave the processor a unilateral right to terminate the agreements at virtually any time, and contained an integration clause stating "this Agreement constitutes the entire agreement between the parties relating to the subject matter hereof and no oral agreement shall alter or add to any part thereof." *Id.* at 762–63. The Eighth Circuit upheld the district court's conclusion that it was

---

[3] The growers in *Crowell* also alleged that the processor made precontract oral promises/misrepresentations: (1) of a long-term commitment to continue placing flocks with the growers beyond the numbers provided for in the agreements; and (2) of a certain amount of profits per year throughout the useful life of the buildings where the flocks would be housed. 264 F.3d at 763–64.

9

unreasonable for the for the growers to rely on the processor's allegedly false precontract promises that "completely contradicted ... the terms of the written contract." *Id.* at 762 ("We agree with the district court that any reliance by the Growers on the three alleged oral promises made by [the processor] was unreasonable as a matter of law because each of the alleged oral promises plainly contradicted the terms of the written contract.").

In *Crowell* the growers' complaint said one thing—that the processor promised only to terminate their contracts for cause—and the agreement said another—that the processor could terminate the contract at will. Under those circumstances, the integration clause made it unreasonable as a matter of law for the growers to rely on an oral promise that directly contradicted the written agreement. Here, Ascente's Proposed Amended Complaint alleges that the defendants misrepresented the amount of their cost overruns, but unlike the processor in *Crowell*, the defendants in this case do not point to any term of the SDA that plainly contradicts that allegedly false statement. Indeed, the $187,336 to be paid by Ascente that is reflected in the SDA matches, rather than contradicts, the alleged precontract falsehood identified in the Proposed Amended Complaint. This distinction means that *Crowell's* holding about the unreasonableness of reliance on a precontract promise that plainly contradicts the terms of the written agreement offers little guidance. Indeed, *Crowell* cites *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 938 F.3d 870, 876 (8th Cir. 1991), for the proposition that under Minnesota law, "[w]hen a promise is not in plain contradiction of a contract, or if contradictory, when it is accompanied by misrepresentations of other material facts in addition to the contradictory intent, the question of reliance is for the trier of fact." *Crowell*, 264 F.3d at 762. In *Commercial Prop. Invs.*, the Eighth Circuit found that summary judgment on the plaintiff's fraud claim was inappropriate even though the parties' contract contained an integration clause; the fraud claim should have gone to a jury because the defendant made repeated false statements about the viability of a hotel franchise to the plaintiff that were not in plain contradiction of the contract. 938 F.2d at 875–76. Similarly, the Court concludes that the defendants have failed to demonstrate that it was unreasonable as a matter of law for Ascente to have relied on the defendants' alleged false representation of the amount of their cost overruns prior to entering the SDA. And the integration clause against this factual backdrop does not preclude Ascente's fraud claim on this point.

Finally, the defendants argue that "[t]here is no allegation or proof that Defendants knew that their cost overruns were inaccurate when they estimated them in January 2015." (Defs.' Mem. at 17.) They note that the internal DRM emails discussing the discrepancy between the $75/hour rate and the $73/hour rate occurred one month after the representations made by DRM regarding the cost overruns during the January 2015 meeting in Denver. (*Id.*) However, the Court notes that the allegations in the Proposed Amended Complaint and the email communications that are embraced by the pleadings, indicate that the defendants adhered to the inflated cost-overrun figure even after realizing the error, attempted to engage in "wild math" to justify sticking with the higher number, and eventually submitted invoices to Ascente that relied on the artificially high number, and concealed the calculus that led to it. Under these circumstances, the Court concludes that Ascente has adequately alleged that the defendants knew their representation regarding the amount of their cost overruns was false at the time it was made or made the representation without regard to its truth or falsity. Accordingly, Ascente's fraudulent-inducement claim is not futile to the extent it is based on the assertion that the defendants falsely represented their cost overruns, thereby inducing Ascente to enter the SDA at an inflated price.

### 3. "Campaign of Fraud"

Ascente next alleges that the defendants fraudulently represented in late January 2015 and on July 23, 2015 that they would complete unfinished work on the web portal, "despite admitting internally before and after they signed the SDA that they would 'divest' and 'get rid of' the Ascente web portal without doing 'any additional' work." (*See* Pl.'s Mem. at 16; Proposed Am. Compl. ¶¶ 40, 102(h).) At times during the hearing, Ascente's counsel referred to the Proposed Amended Complaint as describing a "campaign of fraud" perpetrated by the defendants, and stated that what "emerg[es] from the fog" of the allegations in the proposed amended pleading are numerous statements showing that the defendants attempted to present a rosy picture to Ascente, while its internal communications tell a very different story. (*Id.* at 11:07:00–11:08:00, 11:28:15.)

Even taking the factual allegations in the Proposed Amended Complaint as true and taking the reasonable inferences from those facts in Ascente's favor, Ascente has failed to state an actionable claim of fraud, fraudulent inducement, or reckless

11

misrepresentation based on these allegations. Ascente's "campaign of fraud" claim depends on the assertion that the defendants promised Ascente that they were capable of creating the portal and they would do the required work, but they knew they lacked the ability and expertise to build the online tool and never intended to do so. The factual allegations in the Proposed Amended Complaint do not show that the defendants falsely represented DRM's capabilities and expertise. Nor do the allegations show that DRM engaged in fraud by promising to do work it had no intention to perform at the time any promises were made. *See Vandeputte v. Soderholm*, 216 N.W.2d 144, 147 (Minn. 1974) (providing that a promissory fraud requires an affirmative showing "that the promisor had no intention to perform at the time the promise was made"). Instead, while it may be true that the defendants were ultimately unable to complete the work, there is no new specific allegation to support the claim that, in January and July, they knew they would fail.

First, none of the new allegations in the Proposed Amended Complaint address the defendants' capabilities and expertise. Ascente does not introduce any new facts to suggest that the defendants knew they lacked the ability and know-how needed to build the portal. In fact, the only paragraphs of the Proposed Amended Complaint that relate to this aspect of the defendants' purported "campaign of fraud" are identical to those in the original Complaint. (*Compare* Compl. ¶¶ 23, 33, 37, 41, 67(a), ECF No. 1, *with* Proposed Am. Compl. ¶¶ 24, 43, 48, 54, 102(a).) The District Court has already concluded that Ascente's claims based on the defendants' alleged statements regarding DRM's capability and expertise were not pled with sufficient particularity. (7/26/2018 Order at 10 (noting that Asente "points to claims by at least seven named DRM representatives as to the company's capability and expertise" and dismissing Ascente's fraud claim for failure to "clear the Rule 9 bar").) Nothing has changed about this aspect of Ascente's putative fraud claim, so it would be futile to allow it to go forward.

Second, the problem with Ascente's assertion that the defendants promised to work on the web portal yet never intended to perform is that the internal emails Ascente references in its Proposed Amended Complaint do not support such a claim.[4]

---

[4] Because Ascente has relied on and quoted directly from the defendants' emails in its amended pleading, the Court considers those matters to be embraced by or incorporated into the Proposed Amended Complaint.

12

For example, Ascente relies on a January 22, 2015 email, which was about a week before the Denver meeting, in which a DRM employee stated: "I wish we could get rid of Ascente." (Proposed Am. Compl. ¶ 65.) According to Ascente, this message demonstrates that DRM never intended to perform any additional work on the web portal, but it shows little more than one employee's frustration with a difficult project. Ascente also attempts to show that the defendants never intended to perform the work that was promised as part of the SDA by reference to an internal email dated January 28, 2015, the same day as the Denver meeting. In that message, a DRM employee states that "Rodney [Salazar] will try to get out of the contract with Ascente today." (*Id.* ¶ 67.) The reasonable inference to be drawn from this message is that the defendants were contemplating declining any further involvement with Ascente at the time of the Denver meeting, but instead the parties were able to work out an arrangement that both sides believed would be beneficial. This does not make that agreement a lie. It is not reasonable to infer that DRM had no intention to perform when it represented at the Denver meeting that it would do additional work in exchange for additional payment by Ascente.

Ascente also relies on internal emails in which DRM representatives discussed "divesting" DRM from the Ascente work. For example, Ascente references an internal DRM email from February 4, 2015, in which Matthew Kleinsasser wrote to Stefan Weber and Jim Swenson: "If we don't have a solid handover timeline by the end of April we'll have to do PCI for Ascente regardless of our intent to divest ourselves of it." (Proposed Am. Compl. ¶ 68(d).) However, this statement does not show that DRM secretly harbored an intention not to perform. Mr. Kleinsasser made the statement in the email in response to an ongoing discussion between DRM and Ascente about arranging for a third party to have access to the code DRM had written so that a vendor would be able to modify and support the portal's functioning. (*See* Emmons Decl., Ex. 10 at 1–3.) Other emails from early February 2015 in which various DRM employees discuss a "hold" on development work similarly do not show that DRM never intended to perform work for Ascente. (*See* Proposed Am. Compl. ¶¶ 59, 68(e), 69, 70.) These February 2015 discussions concern a temporary hold on work so that Ascente could engage in its own testing of the web portal. (Emmons Decl., Exs. 11, 14.) Emails from March, April, June, and August of 2015 that are referenced in the Proposed Amended Complaint similarly provide no basis to infer that the defendants never intended to

perform the work that was promised at the Denver meeting or in the SDA. (Proposed Am. Compl. ¶¶ 75–78, 80; *see* Emmons Decl., Exs. 18, 20, 24, 25.) For these reasons, the Court concludes that Ascente has failed to state a claim for fraud, fraudulent inducement, or reckless misrepresentation based on the assertion that they promised to do certain work on the web portal, but never intended to perform.

### 4. "Fully Functional Code"

The final misrepresentation on which Ascente relies to support its fraud allegations is an October 4, 2016 statement in which Rodney Salazar told an Ascente representative that: (1) certain problems with the web portal were attributable to a third party; and (2) that DRM has "performed as required by the agreement" and "produced and supported fully functional code...." (Proposed Am. Compl. ¶ 85; Pl.'s Mem. at 16.) These allegations fail to state a claim for fraud, fraudulent inducement, or reckless misrepresentation because Ascente does not assert any detrimental reliance on Mr. Salazar's statements made more than a year after the SDA was signed. Instead, these alleged misrepresentations appear to be little more than Mr. Salazar's opinions about DRM's performance under the contract. Nothing in the Proposed Amended Complaint suggests that Mr. Salazar intended to induce Ascente into taking any action at all when he made these claims. *See Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 532 (Minn. 1986) (including as an element of fraud that the defendant made a false representation that was intended to induce the plaintiff to act in reliance on it); *Flora v. Firepond, Inc.*, 260 F. Supp. 2d 780, 786 (D. Minn. 2003) ("Under Minnesota law, a plaintiff must allege and prove defendant intended to induce reliance and that the reliance was reasonable.") (citing *Florenzano v. Olson*, 387 N.W.2d 168, 174 n.4 (Minn. 1986), and *Davis v. Re-Trac Mfg.*, 146 N.W.2d 37, 38–39 (Minn. 1967)).

### 5. Conclusion

For all these reasons, the Court concludes that Ascente's fraud, fraudulent-inducement, and reckless-misrepresentation claims are futile, except in one respect. Ascente has plausibly alleged that DRM fraudulently induced Ascente to enter the agreement memorialized in the SDA based on a misrepresentation that DRM had incurred $187,336 in cost overruns.

It is essential to note that the value of the alleged fraudulent-inducement claim that the Court will permit Ascente to add through amendment is quite small. According the allegations before the Court, Ascente was induced by the defendants' alleged false statements to enter a contract for $187,336, while had Ascente been told the truth about the cost overruns, the amount owed under the contract would have been just over $182,339.[5] Therefore, the damages attributable to the only fraud claim that survives futility analysis are approximately $5,000. Given this very small potential recovery, the parties should be advised that the scope of permissible discovery related to this claim will be cabined by the amount in controversy. See Fed. R. Civ. P. 26(b)(1) (defining proportionality in the discovery context to include consideration of "the amount in controversy")

### C. The Scope of the Breach-of-Contract Claim

Finally, Ascente's Proposed Amended Complaint creates some confusion regarding the scope of its breach-of-contract claim. As the District Court previously noted in this litigation, the SDA contains a complete integration clause. (7/26/2018 Order at 5.) The District Court also concluded that "[b]ecause of this clause, the [SDA] is the only contract under which Ascente can claim a breach." (7/26/2018 Order at 5.) Included in the District Court's ruling on this point are any breach-of-contract claims based on the Statement of Work or the Publisher Agreement. Though Ascente's Proposed Amended Complaint is not entirely clear on this point, plaintiff's counsel confirmed at the hearing that Ascente was not attempting through its motion to amend to resurrect any of the breach-of-contract claims that the District Court dismissed from the original complaint.

In addition, the original Complaint asserted the contract claim against only DRM, which was a signatory to the superseded Statement of Work, Publisher Agreement, and the operative SDA. However, beneath the heading "First Claim for Relief: Breach of Contract" in the Proposed Amended Complaint, Ascente has indicated that this claim is

---

[5] The $187,336 reflects 1,697 hours of work building the portal for Ascente and 800.8 hours "for development tied to the commerce engine," both at a rate of $75/hour. (Emmons Decl., Ex. 16 at 3.) The same number of hours multiplied by a rate of $73/hour results in a contract price that would represent just under $5,000 in savings to Ascente (2,497.8 hours x $73/hour).

15

"(Against DR and Digital River)." Each of the numbered paragraphs setting forth this claim alters the language so that the allegations are made against both "Defendants" rather than just DRM.

Digital River was not a signatory to the SDA, a fact which Ascente's counsel confirmed at the February 7, 2019 hearing is not in dispute. Nor does Ascente attempt to hold Digital River liable for the breach of a contract signed by DRM, for example, by piercing the corporate veil between the two entities. Counsel for Ascente suggested instead that Digital River was added to the breach-of-contract claim based on language in the District Court's July 26, 2018 Order on the motion to dismiss. (*See* Hr'g Audio 11:04:00–11:06:45.) In the dismissal order, the District Court observed that Ascente was permitted to plead unjust enrichment as an alternative remedy to the breach-of-contract claim against DRM. (7/26/2018 Order at 8–9.) The District Court also noted that "the breach of contract claim was brought against DRM only, not against Digital River. Therefore, the unjust enrichment claim against Digital River does not require pleading in the alternative to proceed." (*Id.* at 9 n.2.)

To the extent Ascente believed that the District Court's discussion of alternative pleading required, permitted, or invited it to add Digital River as a defendant to its claim for breach of contract, it is mistaken. The District Court merely observed that the unjust-enrichment claim against Digital River could go forward without reference to the rule permitting alternative pleading that justified partial denial of the defendants' motion to dismiss. Simply put, no alternative pleading was required as to Digital River because it is only a possible defendant in one of the two related claims. Nothing in this Order should be read to suggest that a viable breach-of-contract claim was alleged against Digital River.

## IV. Conclusion

For all the foregoing reasons, **IT IS HEREBY ORDERED THAT** Ascente's Motion for Leave to Amend the Complaint **(ECF No. 54)** is **GRANTED IN PART** and **DENIED IN PART**. Subject to the discussion above regarding the futility of a number of Ascente's proposed claims, Ascente shall file the Proposed Amended Complaint as the First Amended Complaint within 7 days of the date of this Order.

Date: April 8, 2019               *s/Katherine Menendez*
                                  Katherine Menendez
                                  United States Magistrate Judge